### FREEMAN v. HARTFIELD.

(Supreme Court, Appellate Division, First Department. April 7, 1916.)

1. ATTORNEY AND CLIENT ⬉166(3)—COMPENSATION OF ATTORNEY—CONTRACT —ADMISSIBILITY OF EVIDENCE—VALUE OF SERVICES.

In an action on a contract for attorney's compensation, where defendant claimed that the contract was contained in a written memorandum, and that he stated he would transfer additional stock to plaintiff as a gift only in case plaintiff behaved himself, while plaintiff and his witness testified that the agreement was oral, and that plaintiff refused to accept the memorandum because it did not contain a promise by defendant to transfer additional shares of corporate stock to plaintiff if the business became profitable, it was error to exclude evidence as to the nature and value of plaintiff's services and negotiations, which would have tended to show the improbability of plaintiff making the agreement claimed by defendant.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 370; Dec. Dig. ⬉166(3).]

2. ATTORNEY AND CLIENT ⚖167(3)—COMPENSATION OF ATTORNEY—CONTRACT —INSTRUCTIONS.

In an action on a contract for attorney's fees, where plaintiff testified that he refused to sign the memorandum of agreement because it omitted a provision for additional compensation, while defendant testified that plaintiff wrote the memorandum himself, that defendant signed it and left it, and that it contained the whole agreement, a charge that, plaintiff having written the memorandum and presented it to defendant for signature, it became a binding contract when defendant signed it, without further acceptance by plaintiff, was erroneous, as taking from the jury the determination of a contested issue.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 375; Dec. Dig. ⚖167(3).]

3. ATTORNEY AND CLIENT ⚖167(3)—COMPENSATION OF ATTORNEY—INSTRUCTIONS—DUTY OF ATTORNEY.

In an action on a contract for an attorney's compensation, where the issue was as to what the terms of the contract were, not whether those terms were reasonable, an instruction that the law requires the utmost good faith on the part of an attorney to his client was inapplicable to the issues, and likely to mislead and prejudice the jury.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 375; Dec. Dig. ⚖167(3).]

McLaughlin and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Louis Castle Freeman against William Hartfield. From a judgment for defendant, and an order denying a motion for new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, DOWLING, SMITH, and DAVIS, JJ.

Herbert R. Limburg, of New York City, for appellant.
Abraham S. Gilbert, of New York City, for respondent.

DAVIS, J. This action is brought to recover damages for the breach of an express contract for services alleged to have been rendered by plaintiff to defendant, at defendant's request, between January, 1907, and September, 1907.

According to the plaintiff's statement the services had relation to the reorganizing and the extension of defendant's business. Specifically they consisted of the negotiating and closing of agreements with one Solari and one Bolognesi for the forming of a corporation to undertake said business, the actual forming of the corporation under name of Hartfield, Solari & Co., the securing and closing of certain contracts between said corporation and certain steamship lines, and advising the defendant in connection with all of these matters and other matters, and conducting various negotiations in the United States and Europe in defendant's behalf.

The proposed corporation was organized with an authorized and issued capital stock of $100,000, consisting of 1,000 shares, of the par value of $100 each share. The stock was issued for about $20,000 cash and certain agreements and services rendered. For his services the plaintiff alleges that defendant expressly agreed to pay him 200

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shares of the full-paid capital stock of said corporation, and furthermore that the defendant Hartfield and Solari would serve the corporation in such capacity as the corporation would direct, without pay, during the life of the contracts with the said steamship lines and renewals thereof, and during the life of any new contracts with said lines.

The plaintiff then alleges a failure on defendant's part to keep this agreement, and a consequent dispute between them, resulting in the making of a new oral agreement in settlement of their dispute on the 11th of September, 1907, by which new agreement the defendant agreed to give the plaintiff 50 shares of the said capital stock forthwith, and if, and as soon as, the business of the corporation was profitable, to give plaintiff an additional 50 shares, and that both defendant and Solari would serve the corporation without pay as before, and that all of the net profits would be distributed annually among the stockholders, and plaintiff would get 10 per cent. of the dividends, and that during the term of the said contracts with the steamship lines the plaintiff would be employed as counsel and attorney by said corporation, and be paid a reasonable compensation for those services. The plaintiff then alleges that he agreed to accept this new agreement and shares of stock in lieu of his rights under the former agreement and in settlement of the dispute between the parties.

The plaintiff also alleges that defendant owns, and has owned since the formation of the corporation, more than a majority of the stock, and that he and Solari controlled almost all of the stock; that the contracts with the steamship lines are still in existence, and with several years to run; that the business of the corporation is and has been very profitable (setting forth net profits for various years); that defendant has transferred 50 shares of said capital stock to plaintiff, but refuses to deliver the other 50 shares, although demanded in 1908 and thereafter. The plaintiff also alleges that various sums of money specified have been received from the corporation by Hartfield & Solari for salaries, etc., as officers, which sums were voted to themselves by themselves, or by their nominees on the board of directors. Due performance is alleged by plaintiff, and he demands judgment for $75,000 damages.

The defendant admits the rendition of services by plaintiff at defendant's request substantially as alleged, but he denies that he agreed to give plaintiff 200 shares of the capital stock of the corporation, and he denies that he and Solari agreed to serve the corporation without compensation. He also denies that a dispute arose between the plaintiff and defendant, and that in settlement of the dispute on September 11, 1911, he agreed to give the plaintiff 50 shares of said capital stock forthwith, and an additional 50 shares when the business became profitable, and to serve the corporation without pay, and employ the plaintiff as counsel and attorney of the corporation. The trial resulted in a verdict for the defendant.

In his bill of particulars the plaintiff states that the agreement sued upon was made at the Waldorf-Astoria Hotel on September 11, 1907; that it was oral, but that a written memorandum of some of the

terms thereof was at said time signed by the defendant. The memorandum is as follows:

"The Waldorf-Astoria, New York.

"Memo. of Oral Agreement Between Hartford & Freeman.

"H. agrees to give him 5000 in stock in H. S. & Co. and like B.'s agreement assure him that there will be no salaries to officers.

"H. agrees he shall have a 1/7th interest in Blyn pier matter.

"H. agrees to hold him atty. La Veloce Line at advance so far as he can and do his best to secure him retainers as attorney by other two lines.

"H. agrees to keep him a director and counsel and attorney of H. S. & Co., as long as H. controls majority of stock or company, and get Freeman all business he could as long as he renders faithful service.

"H. agrees to do this in payment of services, and F. agrees to accept the agreements of H. in payment of his services.          Wm. Hartfield."

The gist of the action was the recovery of the value of the additional 50 shares of stock and its past earning; the breach being the refusal of defendant to deliver to the plaintiff the extra 50 shares of stock.

[1] The main question before the jury was as to the terms of the agreement made on September 11, 1907, at the Waldorf-Astoria Hotel. The defendant claimed that he agreed to give plaintiff only 50 shares of the capital stock referred to. The plaintiff claims that the defendant agreed to give him 50 shares forthwith, and 50 shares when the business of the corporation became profitable. The defendant claimed that the agreement was written, and is set out fully in the memorandum referred to above; while the plaintiff contends that the agreement was oral, and that only a part of it appears in the memorandum.

Concededly the agreement, whatever it was, was arranged at a conversation between the plaintiff, his mother, and the defendant at the Waldorf-Astoria on September 11, 1907. The plaintiff and his mother gave their version of the transaction, and the defendant gave his version. They differed as to the circumstances under which the plaintiff was to get the additional 50 shares of stock claimed by the plaintiff; the plaintiff asserting that he was to get the additional stock when the business became profitable, and the defendant claiming that at this interview he said he might give the plaintiff the additional stock as a present in his discretion, if the plaintiff behaved himself. The defendant further testified that, when asked to put in writing this conditional promise to make the plaintiff a present of 50 shares, he refused to do so, because it was no part of the agreement. The plaintiff, on the other hand, testified that defendant said he would give the additional stock as soon as the business was profitable, but refused to put that promise in writing, whereupon he, the plaintiff, refused to sign the memorandum, or to accept the paper signed by defendant as a memorandum, of the agreement, because it did not contain the whole agreement. Mrs. Freeman, plaintiff's mother, testified to the same effect. Thus was presented a clear issue of fact for the determination of the jury—the terms and scope of the agreement.

The probability of the truth and accuracy of the plaintiff's version of the transaction was thus a fact which the plaintiff had a right to prove. Nevertheless the court excluded as immaterial most, if not

all, of the evidence bearing on that probability when offered by plaintiff, such as alleged conversations between the plaintiff and defendant just prior to September 11, 1907, as to the matter in dispute, previous agreements and offers which were alleged to have been set aside for the one in question, the character, extent, and value of the services rendered by plaintiff, which might tend to show the probability of the existence of an agreement on defendant's part to give 100 shares, as claimed by plaintiff, and the improbability of plaintiff's agreeing to take only 50 shares forthwith, and trusting to the generosity of the defendant to give him a present of 50 additional shares. And the court in charging the jury said:

"I did exclude and keep out of the case, so far as I was able, all matters relating to the value of the services that had been rendered, and the various negotiations back and forth of the parties, and their claims; the reason being that this action is brought upon a contract of compromise."

We think the court erred in keeping this evidence from the consideration of the jury. Had the jury been allowed to consider it, they might have found therefrom the improbability of plaintiff's agreeing to take only 50 shares, with only a chance of getting 50 more, in view of the extent, nature, and value of the services rendered, and in view of the alleged prior offers and agreement of the parties. There is ample authority in support of the admissibility of the evidence which was excluded. Dodge v. Weill, 158 N. Y. 346, 53 N. E. 33; Barney v. Fuller, 133 N. Y. 605, 30 N. E. 1007; Whitney Co. v. Stevenson, 17 App. Div. 224, 45 N. Y. Supp. 552.

[2] Concerning the memorandum signed by defendant at the meeting at the hotel, the plaintiff testified that he refused to sign it, because it did not contain the whole agreement. His mother testified in substance to the same effect. The defendant testified that plaintiff did not refuse to sign the memorandum, but that plaintiff wrote it and handed it to defendant to sign, that he signed it and left it there, and that it contained the complete agreement. Notwithstanding this conflict of evidence as to the signing of the paper, the court charged as follows:

"Ordinarily, where a contract is made between parties and signed only by one, it is necessary that there should be shown an acceptance of that contract by the other party, by its delivery to him and his retention of it in his possession. But in this case I charge you that the plaintiff, having prepared the contract in his own hand, and having presented it to the defendant for signature, that when the defendant signed it and left it upon the table, it became a binding contract, without further evidence of its acceptance on the part of the party who had physically written it in his own handwriting; and, to avoid it, something more was necessary for the plaintiff to do. That was to notify the defendant that he had no right to rely upon the fact that he, the plaintiff, had prepared that contract as expressing his ideas of what the agreement that they had then reached was."

We think this instruction was erroneous, in that it disregarded the fact that the evidence as to the circumstances under which the paper was signed was conflicting, and that it was for the jury, not the court, to say whether the paper became a binding contract as signed. If the jury believed the testimony of the plaintiff, the memorandum did not

constitute the agreement as charged by the court. Thus on this point the court charged the existence of the contract as claimed by defendant as matter of law, when it should have been left to the jury to determine as a question of fact.

[**3**] We also think that the court's charge as to the duty of an attorney when dealing with his client was inapplicable in the circumstances of this case. While the law requires the utmost good faith on the part of an attorney in dealing with his client, that principle is applied in cases where the attorney is seeking to enforce a contract and the question before the court is whether the terms were such as ought to be enforced. The question does not arise where the attorney is trying to establish the existence of the contract. We think the charge in this respect was likely to mislead the jury and prejudice the plaintiff.

We think the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event. Order filed.

CLARKE, P. J., and SMITH, J., concur. McLAUGHLIN and DOWLING, JJ., dissent.